## Ulansey Estate

*Bennett L. Aaron* and *Patrick W. Kittredge*, for accountants.

*Joseph L. Higgins* and *Samuel H. High, Jr.*, for exceptants.

*James L. Hollinger*, contra.

TAXIS, *P. J.*, August 15, 1975—The first and final account of Ruth W. Ulansey, Seymour Ulan-

sey and Industrial Valley Bank and Trust Company, executors, was examined and audited by the court on July 11, 1975.

The account shows a balance of principal and income of $389,971.79, composed of real estate set forth on page 1 of the account, the securities therein set forth, Logan Park Center partnership $17,585, and cash.

The sum of $24,049.35 on account of transfer inheritance tax has been duly vouched. Any further transfer inheritance tax that may be found to be due is awarded to the register of wills, payment thereof to be reflected in the schedule of distribution hereinafter directed to be filed.

All parties having or claiming any interest in the estate, of whom the accountants have notice or knowledge, are stated to have received written notice of the audit in conformity with the rules of court.

Testator died February 26, 1972. Letters testamentary were granted to his surviving spouse, Ruth W. Ulansey, his brother, Seymour Ulansey, and Industrial Valley Bank and Trust Company. The residue of the estate continues in trust under four separate trusts for his widow and three children. The executors have also been named to serve as trustees. At audit, a petition to remove Seymour Ulansey as a co-trustee was filed by the other two trustees, joined by testator's three children, contending essentially that such hostility exists between the widow and Seymour Ulansey that communication between them is difficult, if not almost impossible. A supplementary ground for the removal of Seymour Ulansey is that he lives in California, distance allegedly making communication even more difficult.

Removal of a co-trustee cannot be predicated simply upon disagreement between the trustees. Indeed, some disagreement between co-trustees must be anticipated, otherwise there would be little purpose in ever having more than one trustee. We must, therefore, find some basis, either statutory or in the cases, that would, under the present facts, require the removal of Seymour Ulansey, or at least make his removal justified. We find none.

The testimony first indicates that there might be a conflict of interest between Seymour Ulansey, in his individual capacity as part owner, with decedent, of a nursing home in Philadelphia, and as co-trustee of the present estate. However, Seymour Ulansey has stated definitely on the record that he will not participate in negotiations concerning the disposition of the nursing home, and that he will, in all ways, play a passive role in this respect. This attitude on his part, carried forth, will assure that there will be no disadvantage to the estate for this reason. Moreover, testator was aware of his brother's partnership interest in the nursing home when he appointed him co-executor and co-trustee.

Petitioners make various other allegations concerning the suitability of Seymour Ulansey to be a trustee, but none of them have merit. There was some testimony as to his action in drafting a note on behalf of a claimant against the estate, but the record indicates that the claim was just, and was ultimately paid. It is further alleged that Seymour Ulansey has put many administrative details upon the surviving spouse, but specifically what is wrong with this is not explained, inasmuch as she is co-executor and co-trustee. It is also urged that the remoteness of the residence of Seymour Ulansey aggravates the other difficulties of communica-

tion, and while this could be, it is not grounds for his removal. Seymour Ulansey was a resident of California when decedent wrote his will, but decedent choose, nevertheless, to bargain for his brother's expertise in handling the assets of the estate. It has been long established that the rights and interest of the testator or settlor are paramount, and that it is the duty of the courts to enforce the directions and conditions put upon a gift by a testator or settlor, unless they are actually illegal. Cf. Krewson Trust, 24 Fiduc. Rep. 391, 394 (1973). The removal of a trustee is, therefore, a drastic action, which should be taken only when the estate is actually endangered and such action is necessary to preserve its assets: Fraiman Estate, 408 Pa. 442, 449, 184 A. 2d 494 (1962)

Section 3182 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508 (No. 164), 20 Pa.C.S.A. §3182, applicable (by section 7121, 20 Pa.C.S.A. §7121) to the removal of trustees as well as personal representatives, set forth the long-established rules under which this court has power to remove a fiduciary. It is clear that the first four of the five stated reasons for removal have no application to the present situation. There is no wasting or mismanagement, there is no failure to perform a duty imposed by law, there has been *no removal* from the Commonwealth nor has the trustee ceased to have a known place of residence. We arrive then at the fifth reason, which is a general one authorizing the removal of a trustee whenever ". . . the interests of the estate are likely to be jeopardized by his continuance in office."

The matter comes down to whether or not the inharmonious relationship between the widow and Seymour Ulansey invokes this rule. We have found

no case where disharmony alone, without proof of detriment or threat to the estate as a resulting circumstance, has justified removal. In Rafferty's Estate, 377 Pa. 304, 105 A. 2d 147 (1954), cited by petitioners, there was such disharmony; but there also was a direct conflict of interest between the trustee, who was one of testator's children, and the estate whereof his five brothers and a sister were beneficiaries. The trustee questioned the ownership of disability funds and life insurance policies, which he claimed were his, and there was also a dispute as to whether or not a settlement agreement had been made and breached by the parties. It was clear that the trustee's ". . . personal interest was in conflict with the interest of the decedent's estate, and that (he) could not serve his own interest and that of the estate at the same time." 377 Pa., at 305-06. There is clearly no such active conflict present here, and as was indicated in Fraiman Est., supra, the removal of a trustee is a particularly drastic action where the fiduciary is a testamentary trustee who enjoyed the confidence of the testator.

It is beyond argument at this date that a testator has a right to nominate those who will control and manage his estate in his place. The rights and wishes of testator are the primary consideration; the desires of the beneficiaries are secondary, for the interests which they have derive solely from the gift of testator. We are satisfied that the expertise which Seymour Ulansey possesses concerning the administration of the real property in this estate is and will be beneficial to it, and the record certainly does not support a finding that there is any jeopardy to the estate by such animosity as might exist between Seymour Ulansey and the surviving spouse.

458

The petition for removal of Seymour Ulansey as co-trustee is refused.

Subject to the views expressed in this adjudication and subject to distributions heretofore properly made, the balance for distribution is herewith awarded to Ruth W. Ulansey, Seymour Ulansey and Industrial Valley Bank and Trust Company for the uses and purposes of the trusts set forth in the will.

Counsel for accountants shall file a schedule of distribution in duplicate.

The account is confirmed, and it is hereby ordered and decreed that Ruth W. Ulansey, Seymour Ulansey and Industrial Valley Bank and Trust Company, executors, as aforesaid, forthwith pay the distributions herein awarded.

And now, August 15, 1975, this adjudication is confirmed nisi.

### FINAL DECREE

And now, September 26, 1975, after consideration of the exceptions filed and arguments of counsel, the court is satisfied that its adjudication dated August 15, 1975, fully and accurately sets forth its views of this record, finds no merit to the exceptions and they are herewith dismissed.